WILLIAMS v. BUNKER HILL & SULLIVAN MINING & CONCENTRATING CO.

(Circuit Court of Appeals, Ninth Circuit.   October 7, 1912.)

No. 2,110.

1. MASTER AND SERVANT (§ 226*)—INJURIES TO SERVANT—RISKS ASSUMED.

A servant, by entering on and remaining in an employment, assumed the ordinary risks and dangers of the same, and the extraordinary risks and dangers which he knew or appreciated, but did not assume the risk of the employer's negligence, unless such negligence, or the effect thereof, was known to and appreciated by him, or was obvious, in the sense that it was plain to be observed and understood by him by the reasonable use of his senses.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 659-667; Dec. Dig. § 226.*]

2. MASTER AND SERVANT (§ 288*)—INJURIES TO SERVANT—ASSUMED RISK—QUESTION FOR JURY.

Where, in an action for injuries to a miner by a wire-wound hose coming in contact with a charged electric trolley wire, maintained unprotected in the mine, he testified that he knew he would be "stung" if he came in contact with the wire, but did not know that there was enough power to harm him, he did not assume the risk as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068-1088; Dec. Dig. § 288.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the Eastern Division of the Eastern District of Washington.

Action by Thomas Williams against the Bunker Hill & Sullivan Mining & Concentrating Company. From a judgment for defendant non obstante veredicto (190 Fed. 79), the plaintiff brings error. Reversed and remanded, with directions to render judgment on the verdict.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Belden & Losey, of Spokane, Wash., and Maury, Templeman & Davies and B. K. Wheeler, all of Butte, Mont., for plaintiff in error.

Myron A. Folsom, of Spokane, Wash., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Thomas Williams brought this action to recover damages for personal injuries which he alleged were suffered by him on account of the negligence of the Bunker Hill & Sullivan Mining & Concentrating Company. The mining company based its defense upon the ground of contributory negligence by Williams, and upon assumption of risk of the employment in which he was engaged at the time he was hurt. Williams recovered a verdict. Thereafter the mining company moved the court to enter judgment notwithstanding the verdict, upon the ground that the evidence showed assumption of risk. The court sustained this motion, and ordered judgment for the mining company. Williams sued out a writ of error, and the case is now before this court for review.

A fair statement of the facts is as follows: Williams was an intelligent man, 36 years of age, and a miner of several years' experience. He had never worked in electricity. On the day that he was injured, he was working for the defendant in error on the sixth floor of the 1,100-foot level of the Bunker Hill & Sullivan mine. The shift boss told him to go back into another stope "and fetch two hoses." The level was from 5½ feet to 5 feet 9 inches above the floor. Through the level, which was about 300 feet long, there was an electric wire for trolley purposes, strung 2 or 3 inches below the caps, and fastened to the caps by hangers. There was no covering or insulation on the wire. It carried 500 volts, enough to maim or kill. The purpose of getting the hose was to connect it with a valve on the bottom of the level, and run it up in the end of the stope, to operate a drill. Williams was working at a place where the ground was wet and slippery. The hose was of rubber, bound with wire. He was placing the hose over the cap, to bring it down on the opposite side and connect it with the valve on the bottom of the level. He had one foot against a post, and while working the hose over the cap his foot slipped. The hose struck the trolley wire close to the cap. Williams was thrown down by the contact and very seriously burned and injured by the current passing through him.

Williams knew that the trolley wire carried the electricity to operate the cars which ran through the tunnel. He knew that if he came in contact with the wire he was liable to be "stung." He knew that if a drill or anything of that sort came in contact with the trolley wire he would be "stung," and he knew that the men were careful not to come in contact with the wires when they were riding in on the cars. Williams furthermore knew that the wire was

a thing to avoid, if he could do so. We quote part of Williams' redirect testimony:

"Q. Williams, what knowledge did you have of the danger of touching that wire with the hose? A. Well, I didn't—I didn't intend to touch it at all with the hose. Q. Did you know whether it was dangerous to touch it with the hose? A. I knew it would shock you, but I didn't know it would knock you out. I didn't know there was enough power in it to hurt or to harm you. Q. And did any one ever tell you that there was power in it to do you any injury? A. No, sir. Q. Then, when you avoided it, you disliked the shock? A. Well, I accidentally stepped onto it myself, and that is all."

On recross-examination, Williams said:

"Q. You would not go up and caress one of those wires, or make a plaything out of it, would you, intentionally? A. No; I would not intentionally do it at all. Q. You would regard it as sufficiently dangerous so you would not touch it, if you could avoid it, would you? A. Sure I wouldn't."

In mining, in the use of underground trolleys, a wire and current can be protected by the nailing of a plank close to the wire, which to a great extent isolates the wire and protects against a chance blow. Such protections were used in the Bunker Hill mine wherever in the opinion of those in authority they were necessary and reasonable. Box coverings were also used in the mine, and a trough protection could have been built to cover the wire involved in this case at the point where Williams was hurt.

The court, after having charged the jury that the mining company owed to Williams ordinary care and diligence, to the end that the place where it required Williams to work should be reasonably safe and reasonably free from danger, and that the appliances which it furnished were reasonably safe and free from danger, and having explained to the jury what ordinary care was and how it should be measured, told them that the consequences of failure to use ordinary care would be negligence, provided Williams himself was not guilty of contributory negligence, "if the danger was not one of the risks assumed." Thereafter, in reference to the use of an electric current likely to produce great bodily harm and death to any person who might come in contact with it, the jury were told that it was obligatory upon the company to warn its servants of the situation, so that they might not accidentally or purposely come in contact with the danger, and that such warning must be plainly noticeable to give the servant "a comprehension of the danger" which he might encounter. "Of course," said the court, "no such warning was necessary if the plaintiff fully appreciated the dangers without any warning. * * * A servant may have knowledge of the dangers of the situation, and, in law, under certain circumstances, that would release the liability of the master, provided the servant does have a full comprehension of the danger incident to the situation."

Risk of injury from obvious dangers necessarily incident to the occupation engaged in was dwelt upon, the court in part saying:

"I further charge you that this plaintiff assumed every risk there which was apparent and open to him, whether that risk was an incident of the employment, or whether it was a result of the master's negligence, or whether it resulted from other causes. The plaintiff knew that that electric wire was

there. He knew it was charged with electricity. He knew that it was unguarded, and, if he knew the danger which would befall him in case he came in contact with it, he assumed the risk, and cannot recover. Whether he had knowledge of that danger which would befall him in case he came in contact with that electric wire charged with electricity, gentlemen of the jury, is for you to determine from the evidence. * * * The testimony shows that this plaintiff was employed in this mine for upwards of four months before the accident; that he rode in and out of the mine daily on the cars propelled by this electricity; that he was within a few feet of the wire, and saw the person in charge of the cars stop and start them. He knew that the wire was there, and he knew that it was unprotected, and he knew it conducted electric power sufficient to propel the car in which he was riding. He knew he would be 'stung' if he came in contact with it. What he meant by that, gentlemen of the jury, is for you to say; and it is for you to say, under all the facts and circumstances in this case, and all the testimony, whether or not he knew and appreciated the dangers which surrounded him. If he did, he cannot recover. He must bear his injury in silence. The defendant in this case was not an insurer of its safety, and its property is not yours or mine to bestow in charity."

Now, considering the verdict of the jury with relation to the facts and the charge, we may proceed upon the assumption that there was some negligence on the part of the mining company in failing to exercise ordinary care in boxing the wire, and that there was no contributory negligence on the part of Williams by the accident of his slipping. That the mining company should have protected the trolley wire by a trough or other practical device, and so made the place safe for miners who might be doing such work as Williams was ordered to perform when he was hurt, was a reasonable inference from the evidence. The circumstance that Williams slipped does not compel the conclusion that he was negligent. On the contrary, it rather emphasizes the justness of the view that the wire should have been protected, for it was undisputed that the floor of the tunnel at the point where Williams stood to connect the hose with the valve was "talcy" and wet, a condition in which naturally it was hard for a miner, even in the exercise of extraordinary care, to stand very firmly and draw a hose over a cap and down toward the ground.

[1] From this statement it will be seen that the case resolves itself into the question of what are the correct legal principles which govern the risk assumed by the injured man. Williams, by entering upon and remaining in the employment of the mining company, assumed the ordinary risks and dangers of the employment he was in, and of the extraordinary risks and dangers of such employment which he knew and appreciated. But the risk of the mining company's negligence and of its effect were not of the ordinary risks of Williams' employment, unless such negligence or the effect thereof was known and appreciated by him, or was obvious; that is, plain to be observed and understood by him by reasonably using his senses. Of course, an employé who knows and appreciates the hazards of his service, and those risks which are apparent to ordinary observation, assumes the risks incident to his situation. Neither do we lose thought of the established rule that when a defect is obvious, or so patent as to be readily

observed by a servant by the reasonable use of his senses, having in view his age, intelligence, and experience, and the danger and risk from it are apparent, the servant will not be heard to say that he did not realize or appreciate them. The Court of Appeals for the Eighth Circuit, in the case of Chicago, B. & Q. R. Co. v. Shalstrom, 195 Fed. 725, has recently said:

"Assumption of risk rests upon the maxim, 'Volenti non fit injuria,' and upon the contract of employment. It rests upon the principle that no legal injury can be inflicted upon one who willingly assumes the known or obvious risk of it, and hence it includes the risk of known or obvious defects and dangers which the master or the foreman directs the servant to incur during the employment; for the latter is as free to decline to obey such an order as he is to decline to take or to continue in the employment, and where he knows and appreciates the defect and danger as well as the master or the foreman, he becomes subject to the maxim, 'Upon the willing no legal injury can be inflicted.' The order or direction of the master, or of the foreman, to the servant to work at a specified place, or with certain appliances, does not release the servant from his assumption of the apparent risks and dangers of defects in the place, structure, or appliances that are known to him, or are 'so patent as to be readily observed by the reasonable use of his senses, having in view his age, intelligence, and experience.' Railroad Co. v. Jones, 95 U. S. 439 [24 L. Ed. 506.]  *  *  *"

[2] Within reasonable limits the law assumes that every man has knowledge of the destructive forces in the world and of the peril of contact with them. For instance, every adult of ordinary intelligence may be said to know that coming in contact with an uninsulated charged electric wire is to some extent dangerous. But knowledge of some danger by contact with such an electric wire does not necessarily lead to the conclusion that results of such contact are appreciated. Can it be said, for instance, as a matter of law, that a miner, unskilled in the uses of electricity, comprehends or appreciates, or ought to comprehend or appreciate, that if, while obeying his superior, doing his ordinary work, he should touch an uncovered wire with a metal-bound hose, he would receive, probably, severe or fatal injuries from the electric current passing through his body? It seems to us that the question involves facts and circumstances of such a practical nature as to call for the judgment of a jury, after they have been advised of the governing legal rules of negligence and assumption of risk. The distinctions sometimes drawn between knowledge of danger and appreciation of risk are not confusing, when we consider that knowledge really means such an understanding of the peril as carries with it an appreciation of the danger. We might say here that there was knowledge of danger, yet no actual appreciation of the risk to which Williams was exposed; that is, he knew of danger by the exposed wire, but he did not know of the risk of his act in touching it with a hose in his hand—in other words, he did not appreciate the peril that surrounded him. Nor, as a matter of law, should recovery be denied upon the ground that he ought to have known and appreciated the danger and risk consequent upon touching the exposed wire. We cannot say that the wire itself conveyed announcement of the extent of the dangerous force it carried. The grave danger was hidden and silent, though, as already said, Williams was aware of some danger. So it was for the jury to say whether, in the exercise of proper

care on his part, Williams ought reasonably, as an ordinarily prudent man, to have comprehended the probability of serious injury if he should touch the wire with the metal around the hose he was directed to use.

In National Steel Co. v. Nore, 155 Fed. 62, 83 C. C. A. 578, Judge Lurton, speaking for the Court of Appeals for the Sixth Circuit, said:

"To defeat an action by the defense of assumption of risk, the employer must show, not only that the servant knew of the negligence of which he complains, but that he knew and understood, or ought to have known and appreciated, the increased danger to which he voluntarily exposed himself. There is a distinction between knowledge of defects or knowledge of alleged negligent acts, and knowledge of the risks resulting from such defects or acts. In Cooley on Torts (3d Ed.) 1048, the rule is stated in these words: 'It is essential to the assumption of risk, not only that the servant shall know the defect out of which the danger arises, but that he should appreciate the danger, or that the danger should be manifest to a man of ordinary intelligence and experience in the line of work in which the servant is engaged.'"

In Chicago & E. R. Co. v. Ponn, 191 Fed. 682, 112 C. C. A. 228, the same court, speaking through Judge Hollister, sustained the rule that the servant assumes the risks of his employment which are known and appreciated by him, and regarded the word "appreciated" as meaning no more than actual knowledge. The court cited Mundle v. Hill Mfg. Co., 86 Me. 400, 30 Atl. 16, wherein the Supreme Court of Maine said that one does not voluntarily assume a risk, within the meaning of the rule that debars a recovery, when he merely knows there is some danger, without appreciating the danger. If he comprehends the nature and degree of the danger, and voluntarily takes his chances, he must abide the consequences. Rase v. Minneapolis, etc., Ry. Co., 107 Minn. 260, 120 N. W. 360, 21 L. R. A. (N. S.) 138; Nadau v. White River Lumber Co., 76 Wis. 120, 43 N. W. 1138, 20 Am. St. Rep. 29; Rummell v. Dilworth, 111 Pa. 343, 2 Atl. 355, 363; McGowan v. La Plata M. & S. Co. (C. C.) 9 Fed. 861. Dunn v. Cavanaugh, 185 Fed. 451, 107 C. C. A. 521; So. Pac. Co. v. Yeargin, 109 Fed. 436, 48 C. C. A. 497; Chicago & E. R. Co. v. Ponn, 191 Fed. 682, 112 C. C. A. 228, supra.

The facts of this case distinguish it from those where the servant is familiar with the dangers of machinery or other forces with and about which he is directed to work. In Butler v. Frazee, 211 U. S. 459, 29 Sup. Ct. 136, 53 L. Ed. 281, the injured girl had had long experience in the operation of mangles in laundries. She knew that, if her hand came in contact with the cylinder, serious injury must come to her. The court held that she understood and appreciated the permanent conditions of the machinery being used by her, and the danger which arose from such conditions, and that she voluntarily undertook to work under such conditions, and exposed herself to the dangers. It was held that under such conditions her testimony to the effect that she did not know and appreciate the danger which she was encountering raised no issue for the jury. The court, however, in its discussion, said:

"Where the elements and combination out of which the danger arises are visible, it cannot always be said that the danger itself is so apparent that

the employé must be held, as matter of law, to understand, appreciate, and assume the risk of it. Texas & Pacific Ry. Co. v. Swearingen, 196 U. S. 51, 25 Sup. Ct. 164, 49 L. Ed. 382; Fitzgerald v. Connecticut River Paper Co., 155 Mass. 155, 29 N. E. 464, 31 Am. St. Rep. 537. The visible conditions may have been of recent origin, and the danger arising from them may have been obscure. In such cases, and perhaps others that could be stated, the question of the assumption of the risk is plainly for the jury. But where the conditions are constant and of long standing, and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding, and the employé is of full age, intelligence, and adequate experience, and all these elements of the problem appear without contradiction from the plaintiff's own evidence, the question becomes one of law for the decision of the court. Upon such a state of the evidence a verdict for the plaintiff cannot be sustained, and it is the duty of the judge presiding at the trial to instruct the jury accordingly."

The evidence in this record put the case within the class where the question was properly one for the jury. The learned court was therefore correct in submitting it for a verdict under the instructions given, which gave a clear understanding of the law. It follows that the subsequent action of the court in granting the motion for judgment notwithstanding the verdict was erroneous, and must be set aside.

The judgment is reversed, and the District Court is directed to enter judgment on the verdict as of the date of the rendition of the verdict, together with costs.