# TEXAS & PACIFIC RAILWAY COMPANY. *v.* HARVEY.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 204.   Argued March 20, 1913.—Decided April 14, 1913.

In Texas, the common-law rule as to risks assumed by the employé has been qualified by statute so that the employé is relieved from giving notice of defects where a person of ordinary intelligence would have continued in service with knowledge of such defect.

Ordinarily, and unless so evident that fair-minded men could not differ in regard thereto, negligence or contributory negligence is not a question of law but of fact to be settled by the finding of the jury. *Richmond & Danville R. R. Co.* v. *Powers,* 149 U. S. 43.

In this case the court having charged that there could be no recovery if there was contributory negligence on the part of the deceased and also having specially charged that there could be no recovery if the deceased was not acting with the care of an ordinarily prudent man, there was no error.

The appellate court is not a jury and has no power to grant a new trial. That matter rests in the sound discretion of the trial court, and in a case of this kind its decision cannot be disturbed unless it appears that contributory negligence was so evident that it became a question of law requiring the court to take the case from the jury.

184 Fed. Rep. 990, affirmed.

THE facts, which involve the validity of a verdict against a railway company for damages for causing death of an employé, are stated in the the opinion.

*Mr. F. H. Prendergast,* with whom *Mr. W. L. Hall* was on the brief, for plaintiff in error.

*Mr. Cone Johnson, Mr. Jas. M. Edwards* and *Mr. S. P. Jones,* for defendant in error, submitted.

MR. JUSTICE DAY delivered the opinion of the court.

This case comes to this court from the Circuit Court of Appeals for the Fifth Circuit because The Texas & Pacific Railway Company is a Federal corporation. The action was brought by Amanda Harvey to recover for the death of her son, W. S. Harvey, occasioned by the negligence of the Railway Company while he was in its employ. The judgment against the Railway Company entered by the United States Circuit Court for the Eastern District of Texas, to which court the case had been removed, was affirmed by the Circuit Court of Appeals.

The Railway Company maintained a roundhouse at Marshall, Texas, which was constructed in a crescent form, having near the entrance a turntable. Numerous tracks coming from the roundhouse converged at the turntable, the narrowest point within the roundhouse being at the entrance. A number of posts, serving to support the roof, were located at the entrance to the roundhouse, and the locomotives, in going into and coming from the roundhouse, passed between such posts, a large locomotive, the testimony tends to show, passing within four or five inches of the posts. It appears that on the day of the injury one McGilvery served as hostler in and about the roundhouse; that Harvey, the deceased, was employed as a hostler's helper, the regular helper of one Rix, and that one George was also a hostler's helper regularly of one Adams, but on that day serving with McGilvery, who was taking the place of Adams in his temporary absence. It also appeared that a hostler took the place of an engineer and that it was customary for a hostler's helper to get upon an engine, to give and receive signals and for that purpose to look out of the cab window, to throw and set switches, to accompany the engine to the coal chute and water tank, to supply it with coal and water with a view to its going upon the road, and to otherwise

assist the hostler in his work; and, further, that frequently one helper would assist another helper because the appliances at the chute were heavy and difficult for one man to operate.   On the day of the accident, the testimony discloses, Harvey got upon the engine and took a seat in the cab window on the left side, his hips protruding somewhat over the sill; and George took a similar position, beside Harvey and on the latter's right, on the same side of the engine.   McGilvery got upon the engine on the other side, where he could not be seen by Harvey because of the boiler.   All three having got upon the engine to coal and otherwise prepare it for the road, McGilvery started the engine out of the roundhouse.   It had gone but a few feet when Harvey was crushed between the post and the casing of the cab window in such manner that he was fatally injured and shortly died.   George, sitting in the same posture, but less exposed, passed the post unhurt.

The negligence charged is the failure of the Railway Company to provide a safe place to work and that the posts were so placed as to make it dangerous to use the locomotive in passing them.   The question of the Railway Company's negligence was submitted to the jury in a charge to which no objection in this respect was taken, and the case is brought here because of the rulings made in the trial court and affirmed in the Circuit Court of Appeals concerning the defenses, on the Railway Company's behalf, of assumed risk and contributory negligence.

At the common law a servant assumes the ordinary risks of his employment, but he is not obliged to pass upon the methods chosen by his employer in discharging the latter's duty to provide suitable appliances and a safe place to work, and he does not assume the risk of the employer's negligence in performing such duty.   This rule is subject to the exception that, where a defect is known to the employé or is so patent as to be readily observed by him, he cannot continue to use the defective

appliance, in the face of knowledge and without objection, without himself assuming the hazard incident to such a situation. If a defect is so plainly observable that the servant may be presumed to know its existence and he continues in the master's employment without objection, he is said to have made his election to thus continue, notwithstanding the master's neglect, and in such a case he cannot recover. *Choctaw, Oklahoma &c. R. R. Co.* v. *McDade,* 191 U. S. 64; *Schlemmer* v. *Buffalo &c. Ry. Co.,* 220 U. S. 590, 596.

In Texas, however, where this accident happened, the rule of assumed risk has been qualified by statute. The statute of April 24, 1905, Gen. Laws 1905, c. 163, p. 386, is as follows:

"That in any suit against a person, corporation or receiver operating a railroad or street railway for damages for the death or personal injury of an employé or servant, caused by the wrong or negligence of such person, corporation or receiver, the plea of assumed risk of the deceased or injured employé where the ground of the plea is knowledge or means of knowledge of the defect and danger which caused the injury or death shall not be available in the following cases.

\*     \*     \*     \*     \*     \*     \*     \*

"Second. Where a person of ordinary care would have continued in the service with the knowledge of the defect and danger and in such case it shall not be necessary that the servant or employé give notice of the defect as provided in subdivision 1 hereof."

The above statute was construed in *Houston & Texas Central R. R. Co.* v. *Alexander,* 102 Texas, 497. In that case the Supreme Court of Texas held that the effect of the act was "to deny to the railroad company the defense of assumed risk in case 'the defect or danger' which caused the injury was such that a person of ordinary prudence

under like circumstances 'would have continued in the service.'"    In concluding its discussion of the statute the court said (p. 505):

"The purpose of the law under consideration was to secure the servant against the injustice of being denied reparation for injuries which he received while in the faithful performance of his duties and arising out of the circumstances and conditions over which he could not possibly have control, and under circumstances which would authorize him in the exercise of ordinary care to continue in the service by using the defective machinery or implements."

This view of the statute was given in the charge of the trial court in the present case, and the jury was also instructed as follows:

"Then on the question of assumed risk only, you will determine whether or not a man of ordinary prudence and caution would have continued in the employ of the defendant knowing the position of the post and the circumstances there—that is if that post was too close to the track, it was open and visible to anybody using the track, and its proximity to the track could be seen. The question then is, whether or not under subdivision two of this act a person of ordinary care would have continued in the service with the knowledge of the defect and danger. If you find from the evidence that the post was too close to the track and that the danger was obvious, then you will determine whether or not Mr. Harvey in continuing in the employ of the defendant, exercised the care that a person of ordinary prudence would have exercised under the circumstances—that is, whether a person of ordinary prudence would have continued in the service. If you find that a person of ordinary care would have continued in the service under those circumstances, then you are charged that he would not assume the risk of injury. But, if you find from the evidence that a person of or-

dinary care would not have continued in the service of the defendant, then you are charged that he would assume the risk of injury, and could not recover. That is a question for you to determine from all the evidence."

On the branch of the case dealing with assumption of risk we think the charge of the trial court was as favorable to the Railroad Company as it could properly have been under the statute. If the doctrine of assumed risk applied to this case, it was because the alleged defect was so palpable and visible that Harvey was presumed to know of it, although there was no direct proof upon that subject, and, by continuing to work, to have taken upon himself the hazard of injury from that source. The Texas statute, as we have said, qualified the rule of assumed risk by limiting it to cases where a man of ordinary prudence would not continue to work with such knowledge, real or imputed.

The question principally argued concerns the alleged contributory negligence of the deceased under the circumstances shown. It has often been held in this court that ordinarily negligence or contributory negligence is not a question of law but of fact, to be settled by the finding of the jury. Where there is uncertainty as to the existence of negligence or contributory negligence, whether such uncertainty arises from a conflict of testimony or because, the facts being undisputed, fairminded men might honestly draw different conclusions therefrom, the question is not one of law. *Richmond & Danville Railroad Co. v. Powers*, 149 U. S. 43, 45, and cases there cited.

The charge of the court as to contributory negligence was distinctly and clearly that the plaintiff could not recover if the negligence of the deceased contributed to the injury resulting in his death, and at the close of the charge the court gave a special request, made by the defendant, in which the jury was again told that the plaintiff could not recover if Harvey at the time was not acting with

the care of an ordinarily prudent man when he protruded his hips beyond the window in the manner stated.

There is little dispute as to the facts in this case. We have stated them as the evidence tends to show them. Can it be said that the inference of negligence is so plain that all fairminded men would be compelled to that conclusion upon a consideration of the facts? The appellate court is not a jury for the trial of a case, nor do we have the powers of a court to grant a new trial, which in the Federal practice is a matter resting in the sound discretion of the trial court. The question and the sole question is, Was the contributory negligence so evident, applying the rules we have already stated, that it became a question of law requiring the court to take the case from the jury by direction to return a verdict for the Railway Company because of the contributory negligence of the deceased? We are not prepared to answer this question in the affirmative. Under all the circumstances, as we have related them, we cannot say, as an appellate court, that the trial court was wrong in leaving the question to the jury under the fair and full instructions given.

The other errors assigned concern the requests of the defendant below for a peremptory instruction in its favor because Harvey had placed himself in the window where none of his duties required him to be; but the record discloses that it was customary for a hostler's helper to get upon an engine and to look out of the cab window for the reasons we have stated, and for one helper to lend aid to another. We do not think that the testimony shows that Harvey was not in the line of his duties when he got upon the engine or was a mere volunteer in going to help George in his work under the circumstances.

We find no error in the record requiring the reversal of the judgment of the Circuit Court of Appeals, and it is therefore

*Affirmed.*