### TENNESSEE COPPER CO. v. GADDY.

(Circuit Court of Appeals, Sixth Circuit. June 5, 1913.)

No. 2,343.

1. MASTER AND SERVANT (§§ 288, 289*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—"ASSUMED RISK"—"CONTRIBUTORY NEGLIGENCE."

To establish the defense of "assumed risk" or of "contributory negligence" as a matter of law, in an action to recover for the death of an employé of defendant, it must be shown without substantial conflict either that deceased knew or was chargeable with knowledge of the danger and voluntarily exposed himself to it, or that his acts were such that fair-minded men could not draw different conclusions therefrom touching the existence of neglect on his part directly contributing to his injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1089, 1090, 1092–1132; Dec. Dig. §§ 288, 289.*

For other definitions, see Words and Phrases, vol. 1, pp. 589–591; vol. 2, pp. 1540–1547; vol. 8, pp. 7584, 7585, 7617.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

2. TRIAL (§ 178*)—MOTION FOR DIRECTED VERDICT—REVIEW OF EVIDENCE.

On a motion for directed verdict, the court must take that view of the evidence most favorable to the adverse party.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 401–403; Dec. Dig. § 178.*]

3. MASTER AND SERVANT (§§ 288, 289*)—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY.

Plaintiff's husband, with three others, was loading and removing ore after a blast in defendant's copper mine, when he was killed by a large rock, which fell from a higher stope, which had not been worked for years. He was comparatively new at the work, but his companions were experienced miners. Ten minutes before the rock fell some fine pieces of rock, called "fines," had fallen, and, fearing a larger fall, which frequently followed, the men took shelter for a time, and then resumed work. *Held* that, in view of the opinion of the experienced miners that the danger was over for the time, it could not be said as a matter of law that deceased consciously assumed the risk, or that he was chargeable with contributory negligence, and that both such questions were properly submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1089, 1090, 1092–1132; Dec. Dig. §§ 288, 289.*]

In Error to the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action at law by Nevada Gaddy against the Tennessee Copper Company. Judgment for plaintiff, and defendant brings error. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Howard Cornick and Cornick, Frantz, McConnell & Seymour, all of Knoxville, Tenn., for plaintiff in error.

James B. Cox, of Knoxville, Tenn., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. This proceeding is to reverse a judgment recovered against the Copper Company by Nevada Gaddy as the widow of Thomas Gaddy. The suit was for alleged negligent injuries received by the husband which resulted in his death. Gaddy received his injuries while in the employ of the company and working in one of its copper mines. The acts of negligence alleged are, in substance: (1) That without the knowledge or fault of the deceased the company knowingly left a stope in an unsafe and dangerous condition, from which a rock of several tons in weight fell and rolled to another portion of the mine, where deceased was working, striking and fatally injuring him; (2) that the company neglected to prop and make secure the dangerous portions of such stope, by reason of which the injuries and death ensued without fault of the deceased. The case went to trial upon the general issue, and resulted in a verdict of $6,000. The company moved for a directed verdict at the close of plaintiff's evidence, and again at the close of all the evidence, and both motions were overruled. The charge of the court below is not included in the record, nor was any exception taken to it.

[1] Two questions only are presented to this court: One of assumed risk, and the other of contributory negligence. In the absence of the charge, it will be presumed, not only that the company was negligent, but particularly that the jury was properly instructed upon the two questions brought here; and, indeed, the verdict and judgment must be regarded as conclusive of those questions, unless the pertinent evidence was not in conflict and simply tended to show either (1) that deceased knew or was chargeable with knowledge of the danger and voluntarily exposed himself to it (Tex. & Pac. Ry. Co. v. Harvey, 228 U. S. 319, 324, 33 Sup. Ct. 518, 57 L. Ed. 852; Yazoo & Mississippi Valley Railroad Co. v. Wright, 207 Fed. 281, decided by this court May 6, 1913); or (2) that the acts of deceased were such that fair-minded men could not draw different conclusions therefrom touching the existence of neglect on his part directly contributing to his injury (Tex. & Pac. Ry. Co. v. Harvey, supra, 228 U. S. at page 324, 33 Sup. Ct. at page 520, 57 L. Ed. 852).

[2] The inquiry thus comes to be whether, under the evidence adduced, it was open to the court below to determine these questions as mere matters of law. This is to be tested by the rules applicable to the motion to direct a verdict in favor of defendant made at the close of its evidence. On such a motion the plaintiff was entitled to have taken in her behalf the most favorable view of the evidence. Hales v. Michigan Cent. R. Co., 200 Fed. 533, 537, 118 C. C. A. 627 (C. C. A. 6th Cir.); Erie R. R. Co. v. Weber, 207 Fed. 293, decided by this court June 3, 1913.

[3] There was evidence tending to show the following state of facts: Gaddy, a comparatively inexperienced miner, was at the time of receiving his injuries working in the mine at a depth of between 300 and 400 feet underground, and more than 100 feet below, though not directly under, the place from which the rock fell; and no mining had been done at that place for as much as two years. Gaddy was assisting to break up material previously blasted, containing copper ore, and loading and removing it upon a tram car to the shaft. He was working with three other persons in a place dimly lighted by four small lamps, one of which was hooked on each of their caps. They were under no duty to inspect either roof or walls of the mine. Besides, the angle of the stope was such as would under any circumstances have prevented them from seeing the place upon which the rock had rested. The blasting of ore was done at a level above that of the place where these men worked, and while they were at dinner. Upon their return on this day one or more of them, according to the custom, called to a foreman, who was then near the place of blasting, to know whether it had been finished. The foreman answered, "It is all over," which meant in this mine that it was safe to resume work. The men thereupon began their work, and in something over an hour later the rock fell. Their attention having shortly before the accident been aroused by the falling of some fine pieces of rock and dirt, called "fines," the men ran under a ledge some distance away, and remained there four or five minutes before returning. It seems that they all understood that the falling of fines generally, though not always, preceded a falling of heavier material, and consequently signified danger. The man in immediate charge of the tram car said, "Boys, let's get the car out." The men returned, and remained at the place something like five minutes before the rock fell. Thus about ten minutes elapsed between the falling of the fines and the falling of the rock.

It is insisted that the act of so returning was sufficient to charge the deceased both with the assumption of risk and contributory negligence. Some evidence was offered to the effect that there was a rule which required operatives upon the falling of fines not to resume work unless and until they notified the balkground foreman and received from him assurance that all was safe; but it is not at all clear that Gaddy had notice of this rule. True, the fact that the men placed themselves under a ledge immediately upon the falling of the fines implies that the deceased as well as the other men knew that this signified danger; and yet the three men other than Gaddy, who were much more experienced than he, demonstrated by their actions that in their judgment the falling of the fines in this instance was a false alarm. The falling of fines was not an invariable token of the falling of heavier material. The fact that as much time elapsed after the men returned as had passed during their stay under the ledge tends to vindicate the judgment of these miners that in this instance at least no other fall of material would occur. It is hard to see how a reviewing court can say as a matter of law that the opinions of these miners, especially of the three experienced men, signify that Gaddy consciously or impru-

dently assumed the risk, or that fair-minded men might not reach different conclusions touching the question of his alleged contributory negligence.

These questions were carefully considered by the learned trial judge in his opinion denying the motion for a new trial. Having had the advantage of seeing and hearing the witnesses at the trial and of estimating the value of their testimony, he said:

"I am furthermore of the opinion, especially in the light of Gaddy's own short experience in work of this kind, the temporary purpose for which they returned to work, and the conduct of the other men with him, that the verdict of the jury under the charge, which was unexcepted to, involving, in effect, a finding that neither assumption of risk nor contributory negligence had been established, is not so clearly and manifestly against the evidence or the weight of the evidence as to require it to be set aside under the rule stated by the Circuit Court of Appeals for this circuit in Mt. Adams Ry. Co. v. Lowery, 74 Fed. 463, 472 [20 C. C. A. 596], and Felton v. Spiro, 78 Fed. 576 [24 C. C. A. 321], especially as the court is always more reluctant to set aside a verdict when it is against the party having the burden of proof. Cunningham v. Magoun, 18 Pick. (Mass.) 13."

Upon the whole, we conclude that the case was rightly submitted to the jury. Union Pac. Ry. Co. v. Jarvi, 53 Fed. 65, 69, 3 C. C. A. 433 (C. C. A. 8th Cir.); National Steel Co. v. Hore, 155 Fed. 62, 65, 83 C. C. A. 578 (C. C. A. 6th Cir.); Williams v. Bunker Hill & Sullivan Mining & C. Co., 200 Fed. 211, 215, 216, 118 C. C. A. 397 (C. C. A. 9th Cir.); Yazoo & Mississippi Valley R. Co. v. Wright, supra; Texas & Pacific Ry. Co. v. Harvey, supra.

The judgment below is affirmed, with costs.