# CHESAPEAKE & OHIO RAILWAY COMPANY *v.* PROFFITT.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 273.   Argued March 10, 1916.—Decided June 5, 1916.

The danger to a brakeman at work in switching at one end of a " manifest " train, arising from switching operations conducted by another crew at the other end, is not among the ordinary risks of a brakeman's employment; and, in the absence of notice or knowledge, such brakeman cannot be held to have assumed it. ·

To subject an employee without warning to unusual danger, not normally incident to the employment, is itself an act of negligence.

While an employee assumes risks and dangers ordinarily incident to the employment, so far as they are not attributable to the negligence of the employer or those for whom the latter is responsible, the employee has a right to assume that the employer has exercised proper care to provide a safe place and method of, work.

An employee is not to be regarded as having assumed a risk attributable to the employer's negligence until he becomes aware ·of it, unless it is so plainly observable that he. must be presumed to have knowledge of it.

An employee is not obliged to exercise care to discover dangers resulting from the employer's negligence and which are not ordinarily incident to the employment.

Even if an employee knows and assumes the risk of an inherently dangerous method of work, he does not assume the increased risk attributable, not to such method, but to negligence in pursuing it.

In the absence of knowledge of a custom of the employer in making up trains, a brakeman is not bound by such a custom, unless it is one that a reasonably careful employer would adopt.

A request to charge that the jury find for defendant if the usual method of doing work was pursued irrespective of the question of negligence of other employees was, in this case, properly modified by the court to the effect that the method adopted must be one that reasonably prudent men would adopt and that the injured employee only assumed the risks reasonably and usually incident to such method.

218 Fed. Rep. 23, affirmed.

THE facts, which involve the validity of a judgment for damages for personal injuries in an action under the Employers' Liability Act, are stated in the opinion.

*Mr. Walter Leake* and *Mr. David H. Leake,* with whom *Mr. Henry Taylor, Jr.,* was on the brief, for plaintiff in error.

*Mr. C. V. Meredith* and *Mr. Hill Carter* for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

This was an action brought in the United States District Court under the Federal Employers' Liability Act of April 22, 1908 (c. 149, 35 Stat. 65).

Plaintiff was a brakeman in defendant's employ and, during the night of July 2, 1912, was called for duty at Gladstone, Virginia, to take his place as head brakeman on a fast interstate freight train, known as a "manifest train," comprising about forty cars, which had just come into the division terminal yard at Gladstone and was about to be taken forward. He got upon the road engine and this was attached to the train, plaintiff making the coupling. Just after this he met the yardmaster, who had charge of all the work done in the yard, whose orders plaintiff was bound to obey, and who told plaintiff, according to his testimony, to "cut out three cars at the head end of the train [numbers 2, 3 and 4] and switch them off on a side track and come back and couple up, and they would be ready to go." Plaintiff proceeded with the road engine and crew to take out the three cars, returned to the main track with the engine and car number one, coupled the latter to the forward end of the train, and was in the act of coupling up the air hose, an operation that required him to step between the rails. While

he was in this position, a collision took place, caused by
the acts of the yard crew, who (unknown to plaintiff)
under orders of the yardmaster, and with the aid of the
yard engine, were engaged in switching cars at the rear
end of the train, and who, negligently, as the jury doubt-
less found, drove a cut of twenty-nine cars into the stand-
ing cars (about eight in number) with undue violence.
According to the testimony of the road engineer and fire-
man the jar of the impact was such that, although their
engine was standing, with its independent brakes set,
it was thrown forward twenty feet along the track. Natu-
rally plaintiff was knocked down and run over, and he
sustained serious personal injuries, including the loss of an
arm.

In view of the character of the question that is to be
passed upon, a somewhat particular recital of the evi-
dence is necessary. There was testimony that when a
manifest train came into a terminal yard such as Glad-
stone, destined to points further along the line, the en-
gine and caboose were changed and sometimes cars were
taken out and others brought into the train; and that in
order to save time it was customary to have such shifting
operations, when necessary, done at both ends of the train,
the road engine and road crew operating at the front,
the yard engine and yard crew at the rear. Whether
plaintiff knew of this custom was, under the evidence,
open to dispute. He at one time denied that he knew it
was customary for both ends of a manifest train to be
"worked" at the same time; and while this was after-
wards qualified, it appears not to have been withdrawn.
He admitted that it was customary to follow the instruc-
tions of the yardmaster, but denied that on this occasion
the yardmaster told him anything to the effect that the
rear end of the train was to be worked. He testified that
he had no notice that anything was to be done at that
end of the train beyond attaching the caboose, and that

after putting the second, third and fourth cars upon the side track and coming back to the train he looked up the track, which was straight, saw no lamp or other signal, and then proceeded with his coupling operations, with the result already mentioned.   Whether it was usual, in conducting such switching operations, to have a man at the forward end of the moving cut of cars, was in dispute.   Plaintiff testified that "it is the custom to have a man on the front end of a cut of cars that is being switched into other cars, who looks out for that and runs and stops the engine just before they get there, in making the coupling."   Two of defendant's witnesses contradicted this; one in terms denying the custom of giving a warning as stated by plaintiff; the other declaring that "all the warning he knew of being given, or the practice, was for the men in and about the train to take care of themselves and see for his own danger when he attempts to do any work, and the witness knew of no signals given"; while another and experienced witness, called by defendant, being asked if it was customary when running in a cut of cars to have a man on the front end with a light, replied: "Well, on the yard in switching cars they come right down to the book rule.   It says where cars are being shoved a man must be placed on the head car."   Whether there was a man at the forward end of the cut of cars that produced the collision in question was in controversy.   As to plaintiff's opportunity to gain knowledge of the alleged custom, it did not distinctly appear that he had previously worked on a manifest train.   He testified that he had been employed as brakeman something more than five years, part of the time as an extra man and part of the time as a regular man; that he was an extra man when hurt; had been a regular brakeman until about three weeks before the accident, when he was "pulled off the local freight."

Plaintiff recovered a verdict for substantial damages,

and the judgment was affirmed by the Circuit Court of Appeals. 218 Fed. Rep. 23.

There are numerous assignments of error, but most of them are manifestly unfounded. The only ones requiring notice are based upon the refusal of the trial court to instruct the jury in accordance with defendant's Request B, and the modified instruction that was given in its stead. The requested instruction was, in substance: That if the jury believed from the evidence that the method adopted by defendant in making up the train on the occasion in question was the usual and ordinary method of doing this work, then plaintiff assumed all the risks incident to that method, and they should not find a verdict in his favor because of any injury received on account of said method of doing the work, even though it was the direct and proximate cause of his injury. The instruction given was, in substance: That defendant had the right to adopt reasonable rules and regulations for the conduct and method of handling its trains in its yards, and of making up trains for their departure therefrom, and that if the jury believed from the evidence that the custom prevailed in the Gladstone yard of making up the train from both ends at the same time, that is to say, by working the train engine and crew at the forward end and the yard engine and its crew at the rear end, and that such method was one that reasonably prudent and careful men would have adopted in the conduct of the business, then the plaintiff assumed the risks reasonably and usually incident to and arising from such method of making up trains, and they should not find a verdict in his favor because of any injury received solely on account of said method of making up the train, although they believed from the evidence that the method adopted was the proximate cause of the injury.

The argument for plaintiff in error is that an employee assumes the risks arising from the employer's method of

doing the work, where the dangers are open, obvious or known to the employee, even though they be due to the employer's negligence in establishing the method or system; that the customary method of shifting and coupling cars at both ends of a manifest train at the same time, without notice or warning to those working at the other end, was open, obvious, and known to plaintiff; and that he therefore assumed the risk of any injury from that source.

It appears to have been conceded by plaintiff in the Circuit Court of Appeals that the attaching and detaching of cars by working on both ends of the train at the same time, was customary at the Gladstone yard; but it does not appear to have been conceded in that court or in the trial court that plaintiff knew of this custom or had had such opportunity for knowledge as to be charged with notice of it. Nor was it conceded that the custom included the pushing in of a cut of cars without a man at their head to give warning to other workmen and to signal the engineer to slacken speed. As already shown, the evidence left these matters open to dispute.

There are several reasons why error cannot be attributed to the trial court for refusing the requested instruction B.

(a) The evidence left it in doubt what method was adopted in making up the train in question and what was the usual and ordinary method, and the request therefore failed to define what state of facts should charge plaintiff with an assumption of the risk.

(b) The request ignored the question whether plaintiff had knowledge or was chargeable with notice of the customary method. The argument in effect concedes, what is plainly inferable from the evidence, that the danger to a brakeman at work in switching at one end of a manifest train, arising from switching operations conducted by another crew at the other end, is not among the ordinary

risks of a brakeman's employment. But, if it was an unusual and extraordinary danger, plaintiff could not be held to have assumed it, in the absence of knowledge or notice on his part. To subject an employee, without warning, to unusual dangers not normally incident to the employment, is itself an act of negligence. And, as has been laid down in repeated decisions of this court, while an employee assumes the risks and dangers ordinarily incident to the employment in which he voluntarily engages, so far as these are not attributable to the negligence of the employer or of those for whose conduct the employer is responsible, the employee has a right to assume that the employer has exercised proper care with respect to providing a reasonably safe place of work (and this includes care in establishing a reasonably safe system or method of work) and is not to be treated as assuming a risk that is attributable to the employer's negligence until he becomes aware of it, or it is so plainly observable that he must be presumed to have known of it. The employee is not obliged to exercise care to discover dangers not ordinarily incident to the employment, but which result from the employer's negligence. *Tex. & Pac. Ry.* v. *Archibald,* 170 U. S. 665, 671, 672; *Choctaw, Oklahoma &c. R. R.* v. *McDade,* 191 U. S. 64, 68; *Tex. & Pac. Ry.* v. *Harvey,* 228 U. S. 319, 321; *Gila Valley Ry.* v. *Hall,* 232 U. S. 94, 101; *Seaboard Air Line* v. *Horton,* 233 U. S. 492, 504.

(c) The request required defendant to be acquitted if the usual method of doing the work was pursued, irrespective of the question of the negligence of the yard crew in carrying it out. Negligence in the doing of the work was the *gravamen* of plaintiff's complaint, in his declaration as in his evidence, and defendant was not entitled to an instruction making the pursuit of a customary system decisive of the issue, without regard to whether due care was exercised in doing the work itself. Even if plaintiff knew and assumed the risks of an inherently

dangerous method of doing the work, he did not assume the increased risk attributable not to the method but to negligence in pursuing it. Had the instruction been given in form as requested, the jury, in view of the issue and the evidence, might easily have interpreted it as meaning that if defendant's employees usually and customarily made up trains in such a manner that by a violent collision produced by negligent switching operations at the rear end of a long train a brakeman engaged in the performance of his duties at the forward end, and having no notice or warning of the rear-end switching, was in danger of serious personal injury, there was no liability. This, of course, is not the law.

Nor is the modification of the requested instruction a matter of which defendant may complain. The court evidently understood the request as meaning no more than what it said, and as not intended to embrace the hypothesis that plaintiff knew or had notice that the usual method of making up trains was that adopted on the occasion in question. In the absence of such knowledge or notice, the custom could not be made binding upon plaintiff; certainly not without a finding that it was one that a reasonably careful employer would have adopted. It was this finding that the modification called for.

*Judgment affirmed.*