DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEARS 1918 AND 1919.

---

### Alvin T. Brant, Administrator, Appellee, v. Chicago & Alton Railroad Company, Appellant.

1. APPEAL AND ERROR, § 541*—*what is proper way to question special findings.* The way to question special findings made at the instance of a defendant is by motion for new trial, or by some other appropriate motion, and, upon failure to so question them, the facts found will be considered as proven on appeal.

2. MASTER AND SERVANT, § 831*—*when facts specially found by jury in death action under Federal Employers' Liability Act considered as proven.* In an action for the death of a brakeman, based on the Federal Employers' Liability Act, where death was caused by decedent colliding in the nighttime with a bridge constructed over the car on top of which he was standing, which had a clearance of from 2 to 2½ feet between the bottom of the bridge and the top of the car, and where "telltales" were erected at intervals to warn brakemen of the approach of the bridge, and where the jury specially found that the "telltale" furthest away from the bridge was lighted but that the nearest one was not sufficiently lighted, and that the strands of the rope of the nearest "telltale" were missing from that portion above the running board, the facts so found were considered as proven where such findings were not questioned either by motion for new trial or by some other appropriate motion.

3. MASTER AND SERVANT, § 832*—*when general and special verdicts of jury in death action under Federal Employers' Liability Act are conclusive.* In an action for the death of a brakeman, based on

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

(126)

the Federal Employers' Liability Act, where death was caused by decedent colliding in the nighttime with a bridge constructed over the car on top of which he was standing which had a clearance of from 2 to 2½ feet between the bottom of the bridge and the top of the car, and where "telltales" were erected at intervals to warn brakemen of the approach of the bridge, the controverted questions as to whether the defective condition of the "telltale" nearest the bridge did not extend over the center of the car and was sufficient to give decedent notice of the approach to the bridge, and as to whether he was in fact warned by such "telltale," were settled by the general and special verdicts of the jury.

4. MASTER AND SERVANT, § 430*—*when question of contributory negligence is immaterial in death action under Federal Employers' Liability Act.* In an action for the death of a brakeman, based on the Federal Employers' Liability Act, where death was caused by decedent colliding in the nighttime with a bridge constructed over the car on top of which he was standing which had a clearance of from 2 to 2½ feet between the bottom of the bridge and the top of the car, and where "telltales" were erected at intervals to warn brakemen of the approach of the bridge, the question whether decedent could have performed his duties as efficiently and with more safety by remaining in the engine was immaterial, because under such act contributory negligence was no defense and could only be considered on the question of mitigation of damages.

5. MASTER AND SERVANT, § 304*—*when servant assumes risk attributable to master's negligence.* An employee assumes a risk nominally incident to his occupation, but does not assume a risk or hazard arising from a defect which is attributable to the employer's negligence until he becomes aware of such defect, or unless the facts and circumstances are such that he will be presumed in law to have knowledge of such defects.

6. MASTER AND SERVANT, § 308*—*when brakeman does not assume risk of failure to repair "telltales."* Negligence in permitting "telltales" to become and remain out of repair so that they fail to give warning of the approach to low structures constructed over railroad tracks is not a hazard nominally incident to the occupation of a brakeman, and is not an assumed risk.

7. MASTER AND SERVANT, § 698*—*when risk arising out of condition of "telltales" not assumed by brakeman as matter of law.* Where there was no evidence that a brakeman, who while on top of a car was killed by coming in contact with a low structure over the track, knew that the "telltale" nearest the bridge was out of repair, it would not be held as a matter of law that he assumed the hazard of its condition, which was caused by the negligence of the railroad company.

*See Illinois Notes Digest Vols. XI to XV and Cumulative Quarterly, same topic and section number.

8. APPEAL AND ERROR, §§ 1523, 1543*—*when erroneous instruction on credibility of witnesses will not reverse.* An instruction stating that the jury are the judges of the credibility of the witnesses and of the weight to be given to their testimony, and that they were not bound to take the testimony of any witness as absolutely true, and should not do so, if they are satisfied from all the facts and circumstances proven that such witness was mistaken, or that for any other reason his testimony was untrue or unreliable, although not stating a correct rule of law, could not have misled the jury and was not reversible error in view of other instructions as set forth.

9. DEATH, § 48*—*when exclamations indicating pain admissible in action under Federal Employers' Liability Act.* Under the Federal Employers' Liability Act as amended, providing that in an action for wrongful death the administrator may recover for conscious pain the deceased underwent during the period of time between the injury and his death, it was not error to admit testimony as to exclamations made by the decedent immediately after his injury, indicating pain and distress.

10. MASTER AND SERVANT, § 622*—*when admission of evidence in action for death of brakeman as to condition of "telltale" not error.* In an action for the wrongful death of a brakeman by coming in contact with a low structure over the car on which he was standing, where it was conceded that the "telltale" nearest such bridge was out of order, it was not error to admit testimony as to the condition of another "telltale" located further away, as decedent had the right to rely upon both.

11. MASTER AND SERVANT, § 622*—*when admission of evidence in action for death of brakeman as to condition of "telltale" not error.* In an action for the wrongful death of a brakeman by coming in contact with a low structure over the car on which he was standing, where it was conceded that the "telltale" nearest such bridge was out of order, it was not error to admit testimony as to the condition of another "telltale" located further away, as such "telltales" constituted a part of the physical condition of the surroundings in the vicinity of the approach to the bridge.

12. MASTER AND SERVANT, § 332*—*when risk of being struck by bridge assumed by brakeman.* In an action for the wrongful death of a brakeman by coming in contact with a low structure over the car on which he was standing, where it was conceded that the "telltale" nearest such bridge was out of order, and where there was testimony that the other "telltale" was also out of order, and that decedent knew that he was approaching the bridge under which he could not pass with safety while standing on top of the car, but also knew of the existence of "telltales," he did not, as a matter of law, assume the danger of the defective condition of the "telltale,"

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

where there is no evidence that he knew of such defective condition, but he assumed the danger of the bridge guarded against by the maintenance of the "telltales."

Appeal from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the October term, 1917. Affirmed. Opinion filed October 22, 1918. Rehearing denied April 3, 1919.

BRACKEN & YOUNG and WILLIAM and BARRY MUMFORD, for appellant; SILAS H. STRAWN, of counsel.

ANDERSON & MATTHEWS, for appellee.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

Appellee, as administrator of the estate of Mayo Earl Sutton, deceased, brought an action on the case against appellant to recover damages for the death of said deceased. The trial resulted in a verdict finding appellant guilty and assessing the damages at the sum of $8,500. Judgment was rendered on this verdict, which is sought by this appeal to be reversed. The suit is based upon the Federal Employers' Liability Act, and was tried upon the issues presented by the third, fourth, fifth, seventh and eighth counts of the declaration. In the third count it is charged, in substance, that on August 29, 1916, appellant was a common carrier engaged in interstate commerce, and possessed an ice house at the station of Roodhouse of the length of, to wit, 526 feet, situated immediately north of a certain switch track called track No. 7; and was also possessed of a certain wooden structure, bridge or runway, running south from said ice house over and above said switch track to a platform immediately south of said track, the said platform running east and west along the line of said track, of the length of, to wit, 850 feet; that said switch track ran easterly and

westerly between the ice house and platform under the wooden bridge aforesaid; that on said date appellant operated said interstate train of cars loaded with produce, meats, etc., in an easterly direction to and upon the aforesaid switch track for the purpose of stopping said train on said track running under said wooden bridge so that ice could be taken off said platform and loaded into the top of said refrigerator cars; that Mayo Earl Sutton, appellee's intestate, was engaged by appellant as a brakeman on said car; that said bridge or runway between said ice house and platform was maintained by appellant at a height not sufficient above said track and trains passing thereon to permit persons operating said trains safely to perform their duties while passing under and upon said track at said place; that said bridge or runway was highly dangerous to the servants of appellant operating its cars and trains thereon while performing their ordinary duties; that on said date said deceased was then and there engaged in assisting and operating and running said train on said switch track and under said bridge or runway; that it was the duty of appellant to give warning to its brakemen of the approach of said bridge or runway over said track No. 7 by means of "whipping straps" or "telltales," or by some other suitable device or means, and that appellant in attempting to comply with its duty in that regard had constructed and maintained, and for a long time prior to said date, a "whipping strap" or "telltale" approximately 100 feet west of said bridge or runway; that having so attempted to give warning in that manner it was the duty of appellant to keep and maintain the said "whipping strap" or "telltale" in good and sufficient condition so as to apprise and warn brakemen and other employees of appellant of the approach of said bridge or runway; that appellant, not regarding its duty in that behalf, negligently and carelessly on the date afore-

said, and prior thereto, permitted the said "whipping strap" or "telltale" to become broken, defective and out of repair so that the same did not on said date give said deceased notice and warning of his approach to said bridge or runway; that on said date, and at, to wit, 4 o'clock a. m., and before it was daylight, while said train was being switched and moved eastward for the purpose of setting down said refrigerator cars at and along said platform, to be iced, said deceased at said time climbed on top of one of said cars in the performance of his duties as such brakeman for the purpose of giving and receiving the signal to stop said train at a proper place along said platform to ice said cars; that said Sutton mounted on the top of said train more than 100 feet westward from said bridge or runway; that said Sutton did not have knowledge that the aforesaid "whipping strap" or "telltale" was defective or out of repair; that by reason of appellant's failure to keep and maintain said "telltale" or "whipping strap" at said time in good and sufficient condition to apprise and warn said Sutton of his near approach to said bridge or runway, said Sutton did not have notice of the approach of said train to said bridge or runway, and by reason thereof, while in the performance of his duties, as aforesaid, said Sutton was then and thereby struck and injured by said bridge or runway, and killed, etc.

The fourth count is similar to the third count, except that it is averred therein that appellant maintained two such "whipping straps" or "telltales," one 300 feet west of the bridge or runway, and the other 80 feet west of the same, and that each of said "whipping straps" or "telltales" was at the time broken, defective and out of repair so that they did not give said Sutton notice or warning of the approach of the bridge or runway. The fifth count is substantially the same as the third. The seventh and eighth counts are substantially the same as the fourth count.

To these counts appellant filed two pleas. The first was the general issue, and the second was a special plea, in which it was averred that said bridge or runway and the alleged condition of said "whipping straps" and "telltales" were an ordinary risk or hazard to the employment of a freight brakeman, or appellant, and that said Sutton necessarily and legally assumed all the risks incident to his employment as a freight brakeman in and about said "whipping straps" and "telltales" and in and about said bridge or runway, etc. Appellee filed a replication to this plea, in which it was averred that said Sutton did not assume the risk, etc., mentioned, but that said risks and hazards were extraordinary risks, of which Sutton had no actual or constructive notice or knowledge. To this replication appellant filed its rejoiner, which concluded to the contrary. Upon these pleadings issue was joined.

At the place of the accident, track No. 7 runs east and west. Immediately north of the track was an ice house of appellant. This building was 460 feet long, 64 feet wide and 28 feet high from the ground to the eaves. Along the south side of this ice house was a platform extending south 7 feet 6 inches from the south side of the ice house and 15 feet 10 inches above the top of the rails. Immediately south of track No. 7 was another structure, called the icing platform, the floor of which was about 12 feet wide and 16 feet from the ground. Immediately south of the icing platform was track No. 6. Passing over track No. 7, and connecting the platform on the south side of the ice house with the icing platform, was the bridge in question, the bottom of which was about 15 feet and 10 inches above the top of the rails of the track. This bridge was used for the purpose of carrying the ice from the ice house across the tracks to the icing platform. The ice was then placed in refrigerator cars needing the

same.  The ·clearance between the under side of the bridge and the tops of the refrigerator cars in question was from 2½ to 3 feet.  Stretching across the track at a point 62 feet west of the bridge was a "telltale" consisting of numerous strands of rope hanging at intervals from the top thereof to warn brakemen of the bridge in question.  A similar "telltale" was located over track No. 7, 300 feet west of the bridge.  The lower ends of the strands of the "telltales," when in proper condition, extend downward to a point about 4 feet above the top of an ordinary Swift refrigerator car.  Distributed at irregular intervals under the eaves along the south side of the ice house were 10 single electric lights.  Near the west end of the icing platform was a cluster of 4 electric lights.  South of track No. 6, and at distances varying from 17 feet 4 inches to 26 feet 7 inches south of the south side of the icing platform, were 4 clusters of electric lights, each cluster consisting of 4 lamps.  These clusters varied from 119 to 195 feet apart and extended from west to east.  About 52 feet west of the west end of the ice house, and north of track No. 7, was another cluster of 4 lamps.  These was evidence tending to show that the illuminating power of these lamps became more or less diminished in course of time by the weather and the smoke of passing trains, and that they were regularly cleaned twice a year, and there was evidence tending to show that they had been cleaned about 40 days prior to the date of the accident.  Switch track No. 7 connects with the main track about 550 feet west of the ice house.

On July 7, 1916, Sutton, appellee's intestate, made a written application for a position as freight brakeman, and he was given authority to ride on freight trains as a student brakeman.  He made several trips as such, riding on the engine each time.  He became an extra brakeman on July 14, 1916, and a regular brakeman on July 24, 1916.  There is evidence tend-

ing to show that Sutton, while a student brakeman, was on several trains which were iced on track No. 7 at the said icing plant, and that he had been upon track No. 7 on regular trips as a brakeman a number of times. The evidence shows that head brakemen on trains which passed under this bridge would sometimes ride in the engine until after the bridge was passed and sometimes would ride on top of the freight car, on which latter occasions they would ride lying down on the running board on top of the car or sit down and lean forward while passing under the bridge. When Sutton was examined by the train master prior to his appointment as head brakeman, he was informed by the latter of the bridge located over track No. 7 at the Roodhouse icing plant, and also was informed that there were "telltales" to warn brakemen riding on the cars. There was no dispute in the evidence but that Sutton knew of the location of the bridge and also of the "telltales." The proofs also show, and it is conceded by appellant, that several strands in the "telltale" 300 feet west of the bridge were either missing or in such a bad state of repair that an open space of about 3 feet was left in the center of the "telltale." It is also conceded that a number of strands were missing from the "telltale" nearest to the bridge, leaving an open space therein of at least 24 inches. But it is insisted by appellant that this open space in the latter "telltale" was not directly above or over the running board of the car, but to one side thereof. The evidence was conflicting as to whether the open space in the "telltale" nearest the bridge was immediately over the running board on top of the car or whether it was to one side thereof.

Appellant on the trial asked for five special verdicts upon special interrogatories of fact. The jury found as to these interrogatories as follows: (1) that at and prior to the time of receiving his injury Sutton knew

of the location of the bridge at the icing plant; (2) that he knew he could not safely pass beneath the bridge while standing erect upon the refrigerator car; (3) that the "telltale" over track No. 7, which was furthest from the bridge, was so fully lighted at the time as to have been easily and plainly seen by Sutton from the top of the car on which he was riding when injured; (4) that the "telltale" over track No. 7, which was nearest to the bridge, was not sufficiently lighted at the time of the accident to have been easily and plainly seen by Sutton from the top of the car on which he was riding when injured; (5) that the strands of rope of the "telltale" nearest the bridge in question were missing from that portion of said "telltale" immediately above the running board of the car · upon which said Sutton was riding at the time he collided with the bridge in question. No motion was made in the court below to have any of these special findings set aside, nor were they mentioned as grounds for a new trial. The way to question these findings of fact made at the instance of appellant was by motion for a new trial, or by some other appropriate motion in the trial court. *Pennsylvania Coal Co. v. Kelly,* 156 Ill. 9; *Empire Laundry Machinery Co. v. Brady,* 164 Ill. 58; *Voigt v. Anglo-American Provision Co.,* 104 Ill. App. 423; affirmed 202 Ill. 462. In this court, therefore, it must be considered as proven that the strands in the "telltale" nearest to the bridge with which Sutton collided, which would ordinarily hang over the center of running board on top of the car on which he was riding, were missing; also that there was not sufficient light at the time for him to easily and plainly see the "telltale." Shortly after the engine and train left the main line and entered switch track No. 7, Sutton left the engine in which he had been riding and proceeded to the ‸ ⁀ of the first car next to the engine, which was a ͻwift refrigerator car. There is evidence tending to show that ‸ⁿ stood on the running board on this

car with his back towards the east, or the bridge in question. At this time the car on which he was standing had not passed the first "telltale," that is, the one 300 feet west of the bridge. A long train of cars had pulled in on track No. 6, and the rear cars barely cleared track No. 7, where the two tracks connected. As the train on which Sutton was riding pulled in on track No. 7, the train master told the engineer and the others in the cab of the engine, among whom was Sutton, to look out for the cars on that track. There is also evidence that when the car on which Sutton was standing had reached a point between the two "telltales," about 80 feet west of the bridge, he received a signal from the witness Sink to spot the head car for icing, and at that time Sutton was standing near the west end of the first car next to the engine on the running board and facing the rear of the train, with his back to the bridge and the "telltale." There was also evidence tending to show that the smoke from the engine as the latter entered the narrow space between the ice house and the icing platform would more or less obscure sight of the "telltale" nearest the bridge. The accident happened about 4 o'clock in the morning. Sutton was struck by the bridge, thrown between the cars and both legs severed from his body and both arms were almost severed therefrom. He died about an hour and a half after he received the injuries.

Two defenses to the action were urged in the court below and are presented here. First, that the defective condition of the "telltale" nearest the bridge did not extend over the center of the car on which Sutton was standing, and was sufficient to give him warning of the approach to the bridge, and that he was in fact warned by said "telltale." These were controverted questions of fact, which were settled by the general and special verdicts of the jury. The second defense, and the one most strenuously urged, is that the bridge was a dangerous condition existing in the yards of ap-

pellant, and was an ordinary hazard which Sutton assumed by his employment. It is very urgently maintained that the rules of the company did not require him to be on top of the car at the time and place in question; that he had no duty to perform which required him to be there; and that he was guilty of contributory negligence in going upon the top of the car at that time. There can be no question but that Sutton went on top of the car to perform his duties as head brakeman. Whether he could have performed those duties as efficiently and with more safety by remaining in the engine is immaterial because, under the Federal Employers' Liability Act, contributory negligence is no defense and can only be considered on the question of mitigation of damages. Assumed risk, however, under said act, is a defense. *Seaboard Air Line Ry. v. Horton,* 233 U. S. 492 [8 N. C. C. A. 834]; *Kanawha & M. Ry. Co. v. Kerse,* 239 U. S. 576; *Central Vermont Ry. Co. v. White,* 238 U. S. 507 [9 N. C. C. A. 265]; *Kendrick v. Chicago & E. I. R. Co.,* 188 Ill. App. 172. Sutton knew that he was approaching the bridge in question, under which he could not pass with safety while standing upon the top of the car. But he also knew that appellant maintained, and had maintained for a long time prior thereto, "telltales" which would warn him in time to avoid the danger. He did not assume the danger of the bridge alone, but he assumed the danger of the bridge guarded against by the maintenance of the "telltales." He had a right to rely upon the "telltales" to give him timely warning of the danger of the bridge. This was the hazard which he assumed, and not the hazard that appellant might negligently permit the "telltales" to become so out of repair that they would fail to give the necessary warning. An employee assumes a risk nominally incident to his occupation, but does not assume a risk or hazard arising from a defect which is attributable to the employer's negligence until he becomes aware of

such defect, or unless the facts and circumstances are such that he will be presumed in law to have knowledge of such defects. *Gila Valley G. & N. Ry. Co. v. Hall*, 232 U. S. 94; *Chesapeake & O. Ry. Co. v. Proffitt*, 241 U. S. 462. Nor is it his duty to exercise care to discover danger not ordinarily incident to his employment, but which results from the employer's negligence. *Seaboard Air Line Ry. v. Horton, supra; Gila Valley G. & N. Ry. Co. v. Hall, supra; Chesapeake & O. Ry. Co. v. Proffitt, supra.* Negligence in permitting "telltales" to become and remain out of repair so that they fail to give warning of the approach to low structures constructed over railroad tracks is not a hazard nominally incident to the occupation of a brakeman, and is not an assumed risk. *West v. Chicago, B. & Q. Ry. Co.*, 179 Fed. 801; *Hines v. New York Cent. & H. River R. Co.*, 78 Hun (N. Y.) 239; *Harrison v. New York Cent. & H. River R. Co.*, 127 N. Y. App. Div. 804; *Whitehead v. Wisconsin Cent. Ry. Co.*, 103 Minn. 13. There is no evidence in this case that Sutton knew that the "telltale" nearest the bridge was out of repair, and it cannot be held as a matter of law that he assumed the hazard of its condition, which was caused by the negligence of appellant.

It is claimed by appellant that the giving of the 7th instruction on behalf of appellee was reversible error. This instruction is as follows: "You are the judges of the credibility of the witnesses, and of the weight to be attached to the testimony of each and all of them; and you are not bound to take the testimony of any witness as absolutely true, and you should not do so, if you are satisfied from all the facts and circumstances proved on the trial, that such witness is mistaken in the matters testified to by him, or that for any other reason his testimony is untrue or unreliable." It is conceded that this instruction does not state a correct rule of law because by one interpretation thereof the jurors might be led to believe that

they were not bound to take the testimony of any witness as absolutely true, if they were satisfied, ''for any other reason'' than that presented by the facts and circumstances proved on the trial, his testimony was untrue or unreliable. Counsel for appellant insist that the jury were not confined to such ''other reason,'' as appears from the evidence, but is broad enough to justify the jury in disregarding the testimony of a witness for any reason which, to their minds, or to their prejudices, whether raised by an unjustifiable attack by counsel, or otherwise, rendered the evidence unreliable. In view of the other instructions given, the jury could not have been misled by this instruction.

The 16th instruction given on behalf of appellant was as follows: ''It is the duty of the jury to follow the law as laid down by the court and to apply such rules of law to the evidence as given by the witnesses on the stand in this suit. It is your duty to find a verdict based solely on the law and the evidence, and not to allow yourselves to be influenced by any feeling or sympathy or bias or any consideration whatsoever other than the law and the evidence. You are instructed that no remarks, statements or claims of counsel made either in argument, or otherwise, in the progress of this trial are to be regarded by you as evidence.

''The evidence consists only and solely of those facts which have been testified to upon the witness stand, and the exhibits offered and received as evidence in the case.''

The 20th instruction given on behalf of appellant is as follows: ''It is the duty of the court to state to you, in the form of instructions, the principles of the law by which this case is to be tried but the jury are the sole judges of these facts in dispute between the parties.

''As to the facts in dispute in this case, or as to

what facts the evidence proves or fails to prove, the court does not intimate any opinion whatever, either in these instructions, or by any act or word during the course of the trial, but the decision of the facts is the exclusive province of the jury. You are, of course, to decide these facts from a fair, impartial, and candid consideration of all the testimony, facts and circumstances in proof, and you should not go outside of or beyond the facts proven and such reasonable deductions as you may draw from the facts proven, in considering and deciding the facts. You should not wilfully, or without cause appearing from the evidence, throw aside or disregard the testimony of any witness in the case, but you should fairly and impartially recall to your minds and memories, so far as is possible, all the testimony of all the witnesses on both sides, and you should give to each bit of oral testimony, and to each fact and circumstance proved, such weight as you believe the same fairly entitled to receive. If any attorney in the case has made any statement, in argument, which is not based on a fair consideration of the evidence, you should disregard the same, and your decision of the facts should be based on the evidence, and on reasonable deductions arising out of the evidence.''

In the 21st instruction given on behalf of appellant the jury are informed that it is their duty to follow the instructions of the court as to the law in the case and to render their verdict upon the evidence which has been offered before them, and upon nothing else; that they should not go outside of the evidence to hunt up reasons or grounds upon which to base a verdict; that if counsel on either side had made appeals to their sympathies or prejudices, or statements in the arguments, which are not supported by the evidence, they should wholly disregard the same and not allow such statements to influence them in any degree in arriving at their verdict.

By the 25th instruction given for appellant the jury were told that while they were the judges of the credibility of the witnesses, they had no right to disregard the testimony of a witness sworn on behalf of the defendant simply because such witness was, or is, an employee of the defendant, but that it was their duty to receive the testimony of such witness in the light of all the evidence, the same as they would receive the testimony of any other witness, and to determine the credibility of such employees by the same principles and tests by which they would determine the credibility of any other witness. The above instructions clearly and definitely limited the jury to the evidence in the case in determining the credibility of the witnesses, and cured the error in said instruction No. 7 given for appellee. Substantially the same instruction was given in the case of *Taylor v. Felsing*, 164 Ill. 331, and also in the case of *People v. Arnold,* 248 Ill. 169, and in each of these cases it was held that the giving of such an instruction was not necessarily a reversible error. In view of the above mentioned instructions given on behalf of appellant, it was not reversible error to give appellee's instruction No. 7.

The 3rd instruction given on behalf of appellee was also complained of. What has already been said in regard to the assumption of the risk by Sutton of the negligence of appellant in permitting the "telltales" to become in defective condition disposes of the criticism to this instruction.

Several witnesses were permitted to state what Sutton said immediately after his injury. These statements were to the effect that he asked the doctor to give him chloroform and put him out of his trouble; that his leg was hurting him; to tell his wife and mother good-bye; and occasionally, "Oh, my God!" The federal act as amended provides that in an action for wrongful death the administrator may recover for the conscious pain and suffering, if any, which the

deceased underwent during the period of time between the injury and his death. No statements were admitted which were prejudicial to the rights of appellant.

It is next urged that all the testimony in regard to the "telltale" situated 300 feet west of the bridge should have been excluded because "the question as to whether the strands of that 'telltale' were in place cannot possibly be held to be material upon the issue of whether or not Sutton received any warning from the 'telltale.'" Appellant had erected these two "telltales." The only purpose and object which they could perform, would be to warn employees working on top of the cars of the proximity of the bridge in question. Appellant evidently thought that the dangerous condition which existed would be better provided against by maintaining two "telltales" instead of one. However, two "telltales" were maintained, and Sutton had a right to rely upon each of them. They also constituted a part of the physical condition of the surroundings in the vicinity of the approach to the bridge, and such evidence was admissible for that purpose. There was no error in admitting this evidence.

Several other objections are made to the admission of evidence, which we think are unfounded. There was no reversible error made in the rulings of the court on remarks of counsel for appellee in his argument to the jury.

The judgment of the Circuit Court is affirmed.

*Affirmed.*